OPINION OF THE COURT
Harold Tompkins, J.
Petitioner commenced this holdover proceeding on the ground that the tenant Lenoir/Hickory Knitting Mills, Inc. (Lenoir/ Hickory), a bankrupt corporation, did not maintain the subject rent-stabilized apartment as its primary residence and consequently had no entitlement to a renewal lease. Petitioner now moves and respondents cross-move for summary judgment.
In 1981 and prior to the expiration of respondent’s lease, petitioner commenced proceedings before the Conciliation and Appeals Board (CAB) seeking a certificate of eviction of Lenoir/ Hickory on the grounds that the apartment was not its primary residence. Lenoir/Hickory had filed a chapter 11 bankruptcy petition on April 18, 1979 and was adjudicated a bankrupt on March 12,1980. The CAB made no determination on petitioner’s application for approximately two years. During the period in which the CAB proceeding was pending the Emergency Tenant Protection Act of 1974 was amended by the Omnibus Housing Act of 1983 (the Act) (L 1983, ch 403). Petitioner also served a 30-day notice of termination on July 27,1983 at which time the CAB proceeding was pending. On September 22,1983, the CAB transmitted an opinion in connection with petitioner’s application which read in pertinent part: “Staff was processing the case under the amended code provision when the above described law [i.e., the Omnibus Housing Act] took effect transferring jurisdiction effective immediately from the Conciliation and Appeals Board to a court of competent jurisdiction in all non-primary residence cases * * * The owner’s application is dismissed without prejudice and the owner is directed, within 10 days of the service of this order to serve tenant with a 30 day notice to be immediately followed by the initiation of court action.” Petitioner immediately commenced this proceeding.
Pursuant to the lease between petitioner and Lenoir/Hickory the sole occupants of the apartment were to be William Schey, president of Lenoir/Hickory, Barbara Schey and their immediate family.
Petitioner argues that determination of the outcome of this proceeding hinges upon whether the Omnibus Housing Act of 1983 or prior case law is applicable to the facts of this case. *257 Under the Act the landlord need not offer a renewal lease to a “tenant, not including subtenants or occupants”, who does not utilize the housing accommodations “as his primary residence” (L 1983, ch 403, § 55). Section 39 of the Act defines a tenant as a “party to the lease”. Thus the focus would be upon the tenant named in the lease and not subtenants or occupants. In this case that inquiry would result in the conclusion that the unit is not being utilized as a primary residence since Lenoir/Hickory as a corporation cannot maintain a primary residence. In determining whether or not a tenant has met the primary residence test the court looks to the place of voter registration, automobile registration, driver license and filing of individual tax returns (Code of the Rent Stabilization Association of New York City, Inc., § 54, subd E, par [2], els [i], [ii]). Since corporations are inherently unable to meet these prerequisites, corporate tenants such as respondents would be unsuccessful nonprimary residence cases under the new law as interpreted by the petitioner.
Under prior case law where, as here, a rent-stabilized apartment was leased to a corporation and where the corporation designated a particular individual and his immediate family as sole occupants of the apartment, the court would look to the designated occupant and determine whether that individual used the apartment as his or her primary residence. If so, the landlord was obligated to offer a renewal lease to the corporation. (See Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 94 AD2d 229, affd 61 NY2d 976; Matter of Sommer v New York City Conciliation & Appeals Bd., 93 AD2d 481, affd 61 NY2d 973.)
Petitioner contends that section 55 of the Act should be applied and respondent Lenoir/Hickory be denied a renewal lease since it cannot maintain a primary residence as a matter of law. Respondent on the other hand claims that, since this matter was pending before the CAB before the Omnibus Housing Act was enacted, prior case law should govern this proceeding and that under the holdings of Matter of Cale Dev. Co. v Conciliation & Appeals Bd. (supra) and Matter of Sommer v New York City Conciliation & Appeals Bd. (supra) respondent is entitled to a renewal lease since the unit is clearly the primary residence of William and Barbara Schey (the undertenants). Respondent also argues that petitioner’s interpretation of the Act to require the court to look only to the named tenants’ status in corporate tenant cases is contrary to the underlying purpose of the Act.
THE PRIOR ORDER OF THIS COURT
The issue of the applicability of the Omnibus Housing Act was referred to in the order of another Judge of this court dated June *258 1, 1984 in which the court dismissed respondent’s four affirmative defenses and denied respondent’s cross motion to dismiss the petition. The cross motion to dismiss was based upon estoppel and waiver allegedly established by reason of petitioner’s acceptance of rent checks from the undertenants. In the decision the court stated that the proceeding was governed by the Omnibus Housing Act and therefore the primary residence of the named tenant, Lenoir/Hickory, controlled the outcome of this proceeding. The court directed a trial on the issue of Lenoir/ Hickory’s primary residence.
Petitioner argues that the prior order of this court is the law of the case and that pursuant to that ruling on the issue of the applicability of the new Omnibus Housing Act the petitioner must be granted summary judgment. Respondents on the other hand contend that the law of the case doctrine does not bind this court to apply the Omnibus Housing Act and that the court should look to prior case law and grant summary judgment to respondents dismissing the petition as the apartment is clearly the undertenants’ primary residence.
The law of the case doctrine provides that once an issue has been judicially determined in an action, that determination binds the parties and other Judges of coordinate jurisdiction for the remainder of that action. (29 NY Jur 2d, Courts and Judges, § 496, pp 270-272.)
However, the law of the case doctrine is not an absolute mandate and may be ignored in circumstances vitiating its effectiveness. (Foley v Roche, 86 AD2d 887.) “[T]he phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.” (Messenger v Anderson, 225 US 436, 444.) “The doctrine * * * is not a statutory concept compelling rigid observance * * * [but] is flexible, sensitive, without the finality of the doctrine of res judicata, and does not limit the power of a Judge to deviate from a decision made by another”. (Matter of Rose, 109 Misc 2d 960, 966-967.) Moreover, the prior court’s reference to the applicability of the Omnibus Housing Act was not necessary to a determination of the motion and was made without full argument of the point.
Based upon the foregoing, the prior decision of the court which denied the motion to dismiss the petition, stated that the Omnibus Housing Act governs this proceeding and found that the issue of the primary residence of the corporate tenant could only be resolved at trial, does not bind this court to apply the Act.
*259 THE PROSPECTIVE APPLICATION OF THE ACT
The Act’s provision concerning nonprimary residence cases is to be applied prospectively only. Statutes are presumed prospective in application (McKinney’s Cons Laws of NY, Book 1, Statutes, § 51, subds b, c). No statute is to be applied retroactively in the absence of clear legislative intent (Longines-Wittnouer Watch Co. v Barnes & Reinecke, 15 NY2d 443). The Act as it relates to primary residence (L 1983, ch 403, § 55) was effective immediately upon enactment on June 30,1983 pursuant to section 64 of the Act. There is no mention in the Act concerning retroactivity and given the fact that the Legislature chose to make other sections of the statute retroactive (see L 1983, ch 403, § 37) it is clear that the Legislature intended that section 55 be applied prospectively (M&G Stromer v Granata, NYLJ, May 24, 1984, p 10, col 4 [App Term, 1st Dept]; see, also, Reilly v Labovsky, 120 Misc 2d 478).
Accordingly, since the CAB had petitioner’s challenge before it prior to the enactment of the Omnibus Housing Act and given the prospective application of section 55 of the Act, prior case law governs this proceeding (Matter of Ehrlich v New York City Conciliation & Appeals Bd., 124 Misc 2d 217).*
PRIOR CASE LAW
The Cale and Sommer courts (supra) held that the inquiry in a corporate lease primary residence case should be limited to the primary residence of the designated occupant and not the corporation. As the court stated in Sommer: “[T]he lease expressly provided for occupancy by Kinzler and the members of his immediate family only. Before the lease was issued Kinzler [the occupant] was required to and did guarantee its performance. In sum, it was a lease which, for all practical purposes, was entered into between petitioner and Kinzler but which was executed by *260 Barnwell [Industries] so that it could derive certain tax benefits and Kinzler could derive certain personal benefits. Neither consideration detracts from the reality that Kinzler was the ‘tenant in occupancy’ within the meaning of section 60 of the Rent Stabilization Code.” (Matter of Sommer v New York City Conciliation & Appeals Bd., 93 AD2d 481, 485, supra.) Similarly in Cale Dev. the court held that “While an apartment lease confers the same rights and imposes the same obligations upon a corporate tenant as upon an individual, it is a fiction that such a lease contemplates actual occupancy of the apartment as a private dwelling by the corporation, an artificial ‘person’ created by law. Only the individual for whose benefit the fiction is created can occupy an apartment as a dwelling.” (Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 94 AD2d 229, 233, supra.)
The holdings of these cases are consistent with the over-all policy of the Rent Stabilization Law and the Emergency Tenant Protection Act. They recognize that form should not be exalted over substance and that it is the person that utilizes the unit as its primary residence that should be protected under the law. Legal fictions should not operate to deny a renewal lease to an otherwise protected tenant.
INTERPRETING SECTION 55 OF THE ACT
The court has serious reservations about the interpretation of section 55 of the Act urged by petitioner. It would appear that to construe the Omnibus Housing Act’s provision concerning non-primary residence cases to mean that any corporate tenant of a rent-stabilized apartment is no longer entitled to a renewal lease because of its inability as the “tenant named in the lease” to meet the primary residence test is contrary not only to the express language of Sommer and Cale (supra) but is also inconsistent with the very purpose of rent regulation to protect actual tenants of apartment units who utilize the apartment as their primary dwelling. Here, the Scheys satisfy each test for a primary residence finding including the newly enacted requirement that the residents file New York City income tax returns (Code of the Rent Stabilization Association of New York City, Inc., § 54, subd E, par [2], as amd eff June 16, 1983). Yet under the construction urged herein they would be precluded from even attempting to establish their use of the apartment as a primary residence because the apartment lease names the corporation as tenant.
The Act’s provision concerning determination of primary residence seems more appropriately directed at situations where nonresident tenants traffic in apartments by subletting with no *261 intention of returning to the apartment and claiming that the primary residence requirement was satisfied by the use of the apartment by the subtenant as its primary residence.
Accordingly, even if the court were to apply the Omnibus Housing Act it would not necessarily result in a finding that Lenoir/Hickory is not utilizing the apartment as its primary residence. The principles enunciated in Sommer and Cale (supra) are still viable after enactment of the Act and create an exception to the language of section 55.
Finally, petitioner contends that the bankruptcy of Lenoir/Hickory precludes issuance of a renewal lease upon the same terms as the prior lease. (Code of the Rent Stabilization Association of New York City, Inc., § 60.) The contention is without merit. The undertenants have been the actual tenants in occupancy since the lease’s inception and given the bankruptcy of Lenoir/Hickory the fiction of its being its residence as a dwelling need not be maintained. Moreover the CAB in the face of Lenoir/Hickory’s bankruptcy ordered a renewal lease to be offered to it if successful on the primary residence question. As with all administrative agencies the Board’s “ ‘construction and interpretation of its own regulations and of the statute under which it functions is entitled to the greatest weight’ ” (Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 94 AD2d 229, 232, supra). The petitioner is directed to offer a renewal lease to William and Barbara Schey, the actual residents of the unit.
Accordingly, petitioner’s motion for summary judgment is denied. Respondent’s cross motion for summary judgment is granted. The petition is dismissed.

 There in a CPLR article 78 proceeding, the Supreme Court (Stecher, J.) held that the Omnibus Housing Act is to be given prospective application, and that the CAB may not refuse to decide nonprimary residence cases pending at the time of the enactment of the Act, simply because of the transfer of jurisdiction over nonprimary residence cases pending at the time of the enactment of the Act, to the courts. Upon reargument the court in Matter of Ehrlich v New York City Conciliation & Appeals Bd. adhered to its determination that the Omnibus Housing Act provision relating to primary residence cases is prospective in application. The court distinguished Post v 120 East End Ave. (62 NY2d 19) which had applied an amendment to RPAPL 753 (adding a new subd 4) to be retroactive in application. The applicability of the Act was premised upon the fact that it was enacted subsequent to the vesting of the tenant’s right to a renewal lease.