OPINION OF THE COURT
Alice Schlesinger, J.
Perhaps the most widely discussed topic among members of the landlord-tenant Bar today is the import of the Court of Appeals decision in Golub v Frank (65 NY2d 900 [1985]). Briefly stated, the Golub court held that where an owner seeks to deny a tenant the right to a renewal lease based on nonprimary residence, the owner "must * * * give notice to the tenant of his intention not to offer a renewal lease not more than 150 and not less than 120 days prior to the end of the tenant’s lease term. (Rent Stabilization Code §60.)” (Supra, at p 901.)
In this motion to dismiss, respondent urges this court to apply Golub (supra) beyond its nonprimary residence context to a post-Omnibus Housing Act (OHA; L 1983, ch 403) proceed *620 ing in which the owner is seeking to recover the apartment for his own personal use. Petitioner opposes the motion, arguing that Golub should be limited to its pre-OHA primary residence context. He urges this court to instead follow Short v Graves (109 Misc 2d 672 [App Term, 1st Dept 1981], affd without opn 88 AD2d 796 [1st Dept 1982]). There the Appellate Term held that the landlord could recover the premises for his own personal use if he proved at trial that during the period 150 to 120 days before the lease expired he possessed the requisite intent to occupy the premises for his own personal use, even if he did not notify the tenant during that period of his intention not to renew the lease.
The undisputed facts underlying this motion are as follows.
Respondent is a rent-stabilized tenant of the subject apartment, 120 West 81st Street, apartment 1. The most recent lease between the parties was for three years, from April 1, 1982 through March 31, 1985. The period 150 to 120 days before the expiration of that lease (the "window period”) when the owner would ordinarily be required to offer a renewal lease under Code of the Rent Stabilization Association of New York City, Inc. § 60 occurred between November 2 and December 2, 1984.
Petitioner claims and respondent does not refute that in October 1984, more than 150 days before the expiration of the lease, petitioner advised respondent orally that he would not renew respondent’s lease because he wanted the apartment for his own personal use. Then, about 70 days before the expiration of the lease but nearly two months after the "window period”, petitioner sent respondent a letter dated January 18, 1985, advising him that petitioner would not renew the lease because he wanted the premises for his own personal use. No other written notices were sent until petitioner commenced this proceeding in April 1985, the month after the lease expired.
For the reasons stated below, this court finds that Golub (supra) applies to this proceeding, and therefore grants respondent’s motion to dismiss.
The decision of the Court of Appeals in Golub (supra) is brief, clear and to the point. It is premised on primarily two sections of the Code of the Rent Stabilization Association of New York City, Inc. (RSC). The one, RSC § 50, provides that no tenant shall be denied a renewal lease except upon grounds specified in RSC § 54 or in other applicable laws. The other, *621 RSC § 60, provides that the landlord shall notify the tenant not more than 150 and not less than 120 days prior to the end of the lease term of the expiration of the lease, and offer a renewal lease at the permissible rent.
Based on these two sections, respectively, the Golub court (supra) set forth two requirements for cases in which the landlord seeks to deny the tenant’s right to a renewal lease. The first requirement is that the landlord adhere to the procedures specified in the applicable law relating to the ground on which he is relying to deny the tenant a renewal lease. (E.g., RSC § 54 [E], for nonprimary residence; § 54 [B], for landlord’s own use.)
The second requirement is that the landlord notify the tenant during the period 150 to 120 days prior to the lease expiration of his intention not to offer a renewal lease. The Appellate Division espoused the same two requirements in Elwick Ltd. v Howard (111 AD2d 73 [1st Dept 1985]), which the Court of Appeals affirmed for the reasons stated below, citing its decision in Golub. (Elwick Ltd. v Howard, 65 NY2d 1006.)
The Golub notice requirement applies whether the 150- to 120-day "window period” occurred before or after the OHA. As stated above, the court relied on RSC § 60 for its holding that the landlord must notify the tenant during the 150- to 120-day period of his intention not to renew. The OHA did not in any way amend or repeal RSC §60. Logically, then, the OHA cannot have any effect on Golub’s notice requirement, and Golub should apply equally in pre- and post-OHA cases. (Lyndhurst Assoc. v Drachman, 130 Misc 2d 255 [Civ Ct, NY County].)
Admittedly, the OHA did change the procedures for denying a renewal lease on the ground of nonprimary residence by granting jurisdiction to the court rather than to the administrative agency and by requiring the landlord to serve the tenant with a 30-day notice of intention to commence a proceeding. (OHA § 55.) However, this amendment relates only to Golub’s first requirement that the landlord comply with the procedures specified for denying a renewal lease (RSC § 50). It does not in any way affect the second requirement based on RSC § 60 that the landlord serve a notice of his intention not to renew during the period 150 to 120 days before the expiration of the lease.
This court rejects petitioner’s argument that the OHA’s 30- *622 day notice requirement in nonprimary residence cases reduced the 150- to 120-day notice period to 30 days in post-OHA cases. The 30-day notice required by the OHA is a notice of intent to commence a proceeding. It serves a different function than the 150- to 120-day notice of intent not to renew the lease which the Golub court required.
Neither the Appellate Division nor the Court of Appeals adopted that portion of Justice Myer’s opinion in Golub (supra) which stated that the holding rested on a pre-OHA lease. (Golub v Frank, Sup Ct, NY County, June 8, 1984, No. 8108/ 84, slip opn, at p 2.) The affirmance by the Court of Appeals can be construed only as an affirmance of the lower court’s holding that the tenant was entitled to a renewal lease, for the reasons stated in the court’s own opinion. Furthermore, the Court of Appeals rejected a second opportunity to explicitly limit Golub to pre-OHA cases when it denied the landlord’s motion to reargue the case on that ground. (Golub v Frank, 65 NY2d 1054 [1985].)
Therefore, Golub applies to this case even though the 150-to 120-day period occurred after passage of the OHA. The issue now becomes whether it also applies beyond primary residence cases to proceedings such as this in which the landlord seeks the premises for his own personal use. This court believes it does.
Ever since the Appellate Term decided Short v Graves (supra) it became an accepted principle that the right of a rent-stabilized tenant to a renewal lease "vested” during the 150- to 120-day "window period”. The court there stated, and countless other decisions reiterated, that unless the landlord had the provable intent to recover the apartment for his own personal use during the critical ”,window period”, the tenant was entitled to a renewal lease. (109 Misc 2d, at p 674; see also, e.g., Clark v Kellogg, NYLJ, July 28, 1982, p 6, col 1 [App Term, 1st Dept]; Matter of Fanelli v New York City Conciliation & Appeals Bd., 90 AD2d 756, 757 [1st Dept 1982]; Rosapina v Monaco, 95 AD2d 678, 679 [1st Dept 1983].)
That this principle was universally accepted is further evidenced by the many decisions rendered in 1982 after the Legislature inadvertently repealed RSC § 54 (B), the basis for the landlord’s personal use exception to the tenant’s section 60 right to a renewal lease. The courts continually held during that period that if the window period occurred when section 54 (B) did not exist, the tenant’s right to a renewal *623 lease vested and the landlord could not recover the premises for his own use, even though the repeal of section 54 (B) was inadvertent and short-lived. (See, e.g., Goodman v Skovron, 121 Misc 2d 512 [Civ Ct, NY County 1983]; Keller v Panneton, 121 Misc 2d 381 [Civ Ct, Queens County 1983].)
In other words, ever since Short v Graves (supra) was decided there was no question but that a landlord seeking to invoke the personal use exception to section 60 had to prove that he possessed the requisite intent during the window period to recover the premises. Absent such proof, the tenant’s right to a renewal lease vested.
It is true that the Appellate Term in Short v Graves (supra) did state, essentially in dicta, that the landlord did not have to specifically give written notice to the tenant during the window period of his intention to deny a renewal lease. However, the broad language used by the court is important: "Significantly there is no requirement in section 60 that a landlord notify the tenant — within the specified 150- to 120-day period before the expiration of the lease — that the landlord intends not to renew the tenant’s lease in accordance with one of the exceptions of section 54. ” (109 Misc 2d, at p 673; emphasis added.) The court then continued to state in broad terms that whenever the landlord intended to deny a renewal lease pursuant to any one of the exceptions under section 54, he had to prove that the exception relied upon existed during the window period, or the tenant’s right to a renewal lease would vest. (Supra, at p 674, citing Bosco v Zbikowski, NYLJ, Nov. 21, 1979, p 12, col 5 [App Term, 1st Dept].)
This broad language indicates that the Appellate Term believed that a tenant was not entitled to a notice of nonrenewal under any of the section 54 exceptions. The Court of Appeals addressed exactly that issue in Golub (supra) and decided that the opposite was true. It stated there, and again in Elwick (supra), that section 60 requires that the landlord notify the tenant during the 150- to 120-day window period of his intention not to renew the lease based on a particular section 54 exception. Thus, the statement in Short v Graves (supra) that a notice of nonrenewal is not required is no longer valid.
Short v Graves was not intended to lessen tenants’ rights. Quite the contrary, the majority spoke out clearly that tenants defending their homes against landlords who want the apartment for their own use cannot easily be denied their *624 right to a renewal lease. That is, while the court was constrained to acknowledge the landlord’s right to seek the premises for his own use, it also made clear that in such cases, where the tenant had done nothing wrong, the landlord had the heavy burden to prove that his intent was honest and that it existed during the window period.
Therefore, it makes absolute sense to read RSC § 60 as requiring a notice of intention not to renew in section 54 (B) cases. Such a notice makes it obvious to the trier of fact that the landlord possessed the requisite intent during the window period to seek the premises for his own use. Then the landlord only need prove at trial that his intention was an honest one. Thus, the notice makes the process simpler, more expeditious, more reliable and fairer all at once.
Some observers believe that since Golub (supra) was decided in the nonprimary residence context, it does not apply to landlord’s personal use cases. But certainly the plain reading of the decision in no way suggests that distinction.
Moreover, no reasonable rationale exists for such a distinction. A tenant being evicted under section 54 (B) is one totally without blame. In contrast, a tenant being evicted for nonprimary residence may have illegally given his apartment to another person, or at least is underutilizing it by not using it as his primary residence. (See, Park S. Assoc. v Mason, 123 Misc 2d 750, 752 [Civ Ct, NY County 1984], affd 126 Misc 2d 945 [App Term, 1st Dept 1984].) Therefore, the rights of the tenant in a section 54 (B) case should be at least as great as those in the nonprimary residence case.
Some believe that a distinction should be made between primary residence and landlord’s own use cases based on recent thought that primary residence is curable. (Kanter v East 62nd St. Assoc., 111 AD2d 26 [1st Dept 1985]; contra, Lufkin v Drago, 126 Misc 2d 177 [Civ Ct, NY County 1984].) The rationale is that since a failure to maintain an apartment as a primary residence is curable, the tenant is entitled to sufficient notification before a proceeding so that he or she can take the steps necessary to cure. In landlord’s own use cases, however, no notice is required because there is nothing to cure.
This court at this time takes no position on this "controversial” argument since it is not before me. But I certainly do not believe that it was the possible cure of nonprimary residence that dictated the result in Golub (supra).
*625 In sum, reading Golub alongside Short v Graves (supra) and its progeny, this court concludes that the right of a rent-stabilized tenant to a renewal lease vests during the "window period” unless the landlord notifies the tenant during that period that he or she intends to deny a renewal lease based on one of the exceptions specified in the law. Logic, common sense, fairness, and most importantly RSC §§50 and 60 as interpreted by the Court of Appeals mandate this result, regardless of the exception the landlord relies on.
Finally, the court finds that the oral notice of nonrenewal given in the case at bar does not satisfy the Golub requirement. RSC § 60 requires a notice "by mail”, which impliedly must be written. By analogy, the nonrenewal notice should also be written. A written notice will also supply the clarity and objectivity which Golub (supra) encourages, and avoid unnecessary litigation.
For these reasons, respondent’s motion to dismiss is granted. The court in its discretion denies attorney’s fees, costs and disbursements.